```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
Laurie Dhue,

                    Plaintiff,

          v.                              18 Civ. 2547 (DAB)
                                          MEMORANDUM & ORDER
William James O'Reilly,

                    Defendant.
--------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

Before the Court is Defendant's Motion to Compel Arbitration and/or Dismiss the Complaint. For the foregoing reasons, Defendant's Motion to Compel Arbitration is GRANTED; Defendant's Motion to Dismiss is therefore DISMISSED subject to renewal following completion of the arbitration.

I.   Background

   A. Complaint

Defendant William James O'Reilly ("Defendant") is a former Fox News ("Fox") Anchor. (Compl. ¶¶ 1-2, ECF No. 1.) On April 1, 2017, the New York Times published an article (the "April 1st Article") titled "Bill O'Reilly Thrives at Fox News, Even as Harassment Settlements Add Up." (Id. ¶ 3.) This Article brought to light "numerous" sexual harassment claims against Defendant O'Reilly brought by former Fox employees. (Id. ¶¶ 3-4.) The Article

further alleged that these claims had been settled by Defendant O'Reilly and Fox and the settlement funds were received by several named, former employees of Fox. (Id.) Plaintiff Laurie Dhue ("Plaintiff") was among the alleged victims of sexual harassment and purported settlement fund recipients named in the April 1st Article. (Id. ¶¶ 3-4, 14-17.) Defendant's employment was subsequently terminated by Fox on April 19, 2017. (Id. ¶ 4.) Since the April 1st Article was published, Defendant made a number of public statements commenting on these widely publicized allegations:

1. In the April 1st Article, Defendant was quoted as saying he is "vulnerable to lawsuits from individuals who want [him] to pay them to avoid negative publicity."

2. On April 19, 2017 he issued a statement stating, "[i]t is tremendously disheartening that we part ways due to completely unfounded claims," with regard to being fired by Fox.

3. On April 24, 2017, on his show "No Spin News," Defendant stated, "[I am] very confident the truth will come out, and when it does, I don't know if you're going to be surprised—but I think you're going to be shaken, as I am. There's a lot of stuff involved here."

4. On June 17, 2017, at a live event, Defendant stated, "there will be a bunch of news stories that will explain what happened and why it happened" and that "[i]t has to do with far-left progressive organizations that are bent on destroying anybody with whom they disagree."

5. On September 13, 2017, Defendant stated in an interview, "[President Trump] understands that no one was mistreated on my watch, because that's the truth."

6. On September 19, 2017 Defendant stated on the Today Show that the sexual harassment allegations about him were a "hit-job[,]" that his "conscience is clear," that he "will

      be able to prove" what he says, that "there are more things to come[,]" that he "never mistreated anyone on [his] watch in 42 years[,]" and that he would not countersue because of "the collateral damage of these lawsuits, the press frenzy[; e]very allegation is a conviction."

7. On October 23, 2017, on a radio program, Defendant stated, "I'm not going to run and hide because I didn't do anything wrong," "[i]t's very frustrating for me being accused of everything under the sun and being linked with Harvey Weinstein. This is dishonest in the extreme and it's frustrating . . . [,]" and "I have been in the broadcast business for 43 years with 12 different companies, and not one time was there any complaint filed against me. Nothing, zero!"

8. On that same program, he stated that the New York Times Article quoted figures that were "wildly wrong."

(Compl. ¶ 24-35.)

On March 22, 2018, Plaintiff filed a Complaint against Defendant O'Reilly alleging a single cause of action: defamation per se. Plaintiff alleges that Defendant O'Reilly (1) "has falsely made public statements regarding the allegations of sexual harassment against him[;]" (2) that he "has made these statements on live television, at public events, and in statements to the press that were intended to be—and have been—widely disseminated[;]" (3) that he "is—and has always been—aware that his statements are false and has made the statements in an effort to bolster his public reputation at the expense of Plaintiff's public reputation[;]" (4) that he "has made all statements regarding [Plaintiff] with malicious intent, both in that he has knowingly made false statements and has done so with the intent to harm [Plaintiff's] reputation." (<u>Id.</u> ¶ 55-59.) Plaintiff further

alleges that Defendant's comments injured Plaintiff because "no employers will hire her if they believe that [Plaintiff] has previously made false allegations of sexual harassment in the workplace." (Id. ¶ 60.)

### B. Motion to Compel Arbitration and/or Dismiss the Complaint

On June 4, 2018, Defendant moved to Compel Arbitration and/or Dismiss the Complaint. (Def.'s Mot. to Compel Arbitration and/or Dismiss the Compl. ("Def.'s Mot."), ECF No. 14.) Defendant submitted evidence in support of his Motion including the Confidential Settlement Agreement and Mutual General Release between Defendant's former employer, Fox News, and Plaintiff Laurie Dhue. (Bourne Decl. (the "Settlement Agreement"), ECF Nos. 15-2, 23-1[1].) Defendant seeks to compel arbitration pursuant to the arbitration clause in the Settlement Agreement which states:

> **Dispute Resolution.** Any dispute arising from this Agreement shall be submitted to Judge Maas at first for confidential mediation, and if unsuccessful, for final binding non-appealable arbitration by Judge Maas at JAMS. Any such

---

[1] Defendant provided a redacted copy of the Settlement Agreement and requested this Court permission to file the Agreement in a redacted form. (ECF No. 13.) In an Order dated June 11, 2018, this Court rejected Defendant's request pursuant to our reasoning in our April 3, 2018 Order in Bernstein v. O'Reilly, No. 17-9483 (DAB), 2018 WL 1615840 (S.D.N.Y. April 3, 2018) (ECF No. 57). Plaintiff, in supporting her Motion in Opposition to Defendant's Motion to Compel Arbitration and/or Dismiss the Complaint, has provided the Court with the unredacted Settlement Agreement, (ECF No. 23).

>     arbitration shall take place pursuant to JAMS's Comprehensive
>     Arbitration Rules and Procedures. For the avoidance of doubt,
>     this includes any dispute arising under paragraph 3(a)(iii)-
>     (iv) in which Fox asserts that it has been relieved of its
>     obligation to make payment of the $600,000 referenced
>     therein. Judge Maas may award the prevailing party attorneys'
>     fees associated with arbitration of any dispute brought
>     hereunder.

(Settlement Agreement ¶ 7(g).)

## II. Analysis

### A. Motion to Compel Arbitration

Plaintiff argues that Defendant O'Reilly cannot avail himself of the Settlement Agreement's arbitration clause both because he is not a party to the contract and because this defamation action is not a "similar dispute" sufficient to estop Plaintiff from denying her obligation to arbitrate. Both arguments fail. This Court HOLDS that Plaintiff, a signatory to the Settlement Agreement, is estopped from avoiding arbitration with Defendant, a non-signatory, because the Parties and the Defendant "have a sufficient relationship to each other and to the rights created under the agreement." Contec Corp. v. Remote Solution Co., 398 F.3d 205, 209 (2d Cir. 2005).

In the alternate she argues that even if Defendant could avail himself of the arbitration clause, this dispute falls outside the scope of the agreement and thus is not subject to arbitration. We

do not reach the merits of this argument. We instead conclude that the threshold question, whether Plaintiff agreed to arbitrate this issue, must be decided by an arbitrator.

### 1. Legal Standard

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks and citation omitted). That standard "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits[] . . . [and] draw all reasonable inferences in favor of the non-moving party." Id. (internal quotation marks and citations omitted).

### 2. Who Decides the Question of Arbitrability?

"The question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting Howsam v. Dean Witter Reynolds, Inc. 537 U.S. 79, 83 (2002) and citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)) (emphasis in original). "This principle

6

flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties." Id. (internal quotation marks and citation omitted) (alteration in original). "The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" Id. (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)).

Moreover, it is settled law in this Circuit that when the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005); see Lapina v. Men Women N.Y. Model Mgmt., 86 F. Supp. 3d 277, 279 (S.D.N.Y. 2016); Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 122 (2d Cir. 2003); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1202 (2d Cir. 1996); Emilio v. Sprint Spectrum L.P., 508 Fed. App'x. 3, 5 (2d Cir. 2013); but see Republic of Iraq v. BNP Paribas USA, 472 Fed. App'x. 11, 13 (2d Cir. 2012) (denying, for other reasons, that the question of arbitrability is delegated to the arbitrator despite the incorporation of rules that empower an arbitrator to decide issues of arbitrability).

Here, the arbitration clause in the Settlement Agreement clearly vests the "question of arbitrability" in the arbitrator. The arbitration clause states, in relevant part:

> Any dispute arising from this Agreement shall be submitted to Judge Maas at first for confidential mediation, and if unsuccessful, for final binding non-appealable arbitration by Judge Maas at JAMS. Any such arbitration shall take place pursuant to JAMS's Comprehensive Arbitration Rules and Procedures.

(Settlement Agreement ¶ 7(g).) Incorporating the JAMS Comprehensive Arbitration Rules is "clear and unmistakable evidence" that the parties delegated questions of arbitrability to the arbitrator. Accord Emilio, 508 Fed. App'x. at 5. In fact, the JAMS Comprehensive Arbitration Rules provide that:

> Jurisdictional and arbitrability disputes, <u>including disputes over the formation, existence, validity, interpretation or scope of the agreement</u> under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

2014 JAMS Comprehensive Arb. R. & P. 11(b) (emphasis added). Whether Plaintiff has agreed to arbitrate <u>this</u> dispute is an issue pertaining to the "validity, interpretation, or scope" of the agreement. Accord Contec, 398 F.3d at 208. Thus, there is no doubt that the question of arbitrability has been clearly and unmistakably delegated in writing to an arbitrator in the Settlement Agreement.

8

### 3. Who Can Arbitrate?

However, the inquiry does not end with our determination that the Settlement Agreement delegates the question of arbitrability to the arbitrator. Plaintiff argues, and Defendant does not dispute, that Defendant O'Reilly is not a party to the Settlement Agreement. (See Pl.'s Mem. 9-12, ECF No. 22.) She argues that he therefore cannot avail himself of the arbitration clause.[2] (Id. 9-10.) In opposition, the Defendant argues that Plaintiff, a signatory to the contract, must be estopped from denying an obligation to arbitrate. (Def.'s Mem. 11-12, ECF No. 16.) We agree with Defendant that Plaintiff is estopped from denying an obligation to arbitrate because Defendant and the Parties to the Settlement Agreement "have a sufficient relationship to each other and to the rights created under the agreement" and the arbitration clause does not exclude non-parties from availing themselves of it.

---

[2] Plaintiff also argues that Defendant cannot invoke the arbitration clause because he is not a third-party beneficiary of the Contract. (Pl.'s Mem. 11-13.) We do not reach the merits of whether Defendant is a third-party beneficiary because it is not dispositive of whether the non-signatory Defendant can estop a signatory Plaintiff from denying arbitration under the Second Circuit estoppel test. Contec, 398 F.3d at 209 (holding that a signatory can be estopped from denying arbitration when the non-signatory and signatory "have a sufficient relationship to each other and to the rights created under the agreement.")

No doubt, the FAA "embodies a national policy favoring arbitration," however, it "does not require parties to arbitrate when they have not agreed to do so." Nicosia, 834 F.3d at 228-29 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) and Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012)) (internal alternations omitted). Thus, a non-signatory generally may not seek to compel a signatory to a contract to arbitrate. Contec, 398 F.3d at 209 ("[J]ust because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory."); see e.g., Republic of Iraq v. BNP Paribas USA, 472 Fed. App'x. 11, 13 (2d Cir. 2012); In re Paragon Offshore PLC, No. 16-10386, 2018 Bankr. LEXIS 2322, *31-34 (Bankr. D.Del. Aug. 6, 2018).

However, this Circuit recognizes that a signatory to a contract with an arbitration clause is estopped from avoiding arbitration with a non-signatory when the non-signatory and signatory "have a sufficient relationship to each other and to the rights created under the agreement." Contec, 398 F.3d at 209. In practice, no court in this Circuit has denied this right as long there is some demonstrable relationship between the non-signatory and the contract.[3] Indeed, all cases, but one, in this Circuit that

---

[3] Some Courts in this District interpret relational sufficiency to be a deeply fact-specific inquiry. Lapina v. Men Women N.Y. Model Mgmt., 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) ("the signatory's

address the ability of a non-signatory to enforce an arbitrability clause allow the non-signatory to estop the signatory plaintiff from denying an obligation to arbitrate.[4]

BNP Paribas, where the arbitration clause itself specifically excluded a non-signatory from availing itself of the arbitration clause, is the only narrow, fact-dependent exception to this general rule.[5] 472 Fed. App'x. at 13. In this case, the arbitration

---

claims [must be] integrally related to the contract containing the arbitration clause." (internal quotation marks and citation omitted)); Birmingham Assocs. v. Abbott Labs., 547 F. Supp. 2d 295, 296 (S.D.N.Y. 2008) (Whether a plaintiff is estopped from denying arbitration is a "fact-specific" inquiry requiring "careful review of the relationship among the parties, the contract[] they signed and the issues that had arisen among them." (internal quotation marks and citation omitted)). A deeply fact-specific inquiry on whether the signatory's claims are "integrally related to the contract containing the arbitration clause" overlaps substantially with whether the issue should be arbitrated. See e.g., Lapina, 86 F. Supp. 3d at 284-85; Abbott Labs., 547 F. Supp. at 302-03. Having already decided that the question of arbitrability must be delegated to the arbitrator if the arbitration clause can be invoked by Defendant O'Reilly, this Court lacks the authority to engage in an analysis that substantially overlaps with and decides the very issue left to the arbitrator: whether this dispute must be arbitrated.

[4] E.g., Contec Corp., 398 F.3d at 209-11; Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 105-06 (S.D.N.Y. 2017); Gerena v. Neurological Surgery, P.C., No. 15-4634, 2016 U.S. Dist. LEXIS 76080, *14-19 (E.D.N.Y. June 9, 2016); Lapina, 86 F. Supp. 3d at 284-85; Abbott Labs., 547 F. Supp. 2d at 302-04; Washington v. William Morris Endeavor Entm't, LLC, No. 10 Civ. 9647, 2011 U.S. Dist. LEXIS 81346 *25-29 (S.D.N.Y. July 20, 2011).

[5] The Second Circuit issued a summary order and brief opinion in this case affirming the District Court's judgment and reasoning for denying the non-signatory the ability to invoke the arbitration

clause in question stated in relevant part that "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement shall be referred by either Party to arbitration . . . ; [t]he Parties shall be bound by the arbitration award rendered in accordance with such arbitration as the final adjudication of any such dispute, controversy, or claim." Id. at *12-13 (emphasis added). Finding that the arbitration clause expressly excluded non-signatories from availing themselves of the arbitration clause, the Court concluded that the non-signatory, third-party beneficiary could not estop the signatory plaintiff from denying an obligation to arbitrate. Id.

Such is not the case here. The Settlement Agreement does not exclude non-signatories from availing themselves of the arbitration clause. (Settlement Agreement ¶ 7(g).) Indeed, the arbitration clause does not say that arbitration can be commenced only at the request of a Party to the Agreement nor does it bind only the Parties to the Agreement to the outcome of arbitration. Thus, it is distinguishable from the arbitration clause in BNP Paribas. Moreover, Defendant O'Reilly has a demonstrable relationship to the Settlement Agreement. The Agreement explicitly arises from and is directly related to alleged sexual harassment,

---

clause. BNP Paribas, 472 Fed. App'x. at 13. This Order has no precedential effect.

gender discrimination, tortious interference, blacklisting, and retaliation claims against both employer, Fox, and employee, O'Reilly. (Settlement Agreement ¶ 2(c).) The Settlement Agreement also explicitly releases both Fox, the signatory, as well as O'Reilly, the non-signatory defendant, from liability under these claims. (Id. ¶ 4(a).) This Court thus concludes that the broad terms of the arbitration clause combined with Defendant O'Reilly's relationship to the Parties and the Settlement Agreement itself estops Plaintiff Dhue from denying an obligation to arbitrate the question of arbitrability.

### B. Motion to Dismiss is DISMISSED.

Because Plaintiff's claim is subject to mandatory arbitration, Defendant's Motion to Dismiss is DISMISSED subject to renewal following the completion of arbitration. See 9 U.S.C. § 3; Lapina, 86 F. Supp. 3d at 288 (citing Murray v. UBS Sec., LLC, No. 12 Civ. 5914, 2014 WL 285093, at *14 (S.D.N.Y. January 27, 2014); Guida v. Home Sav. of Am., Inc., 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011); Kowalewski v. Samandarov, 509 F. Supp. 2d 477, 491 (S.D.N.Y. 2008)).

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Compel Arbitration is GRANTED; the threshold question, whether this

dispute is subject to arbitration, is delegated to the arbitrator. Defendant's Motion to Dismiss is DISMISSED subject to renewal after completion of the arbitration.

SO ORDERED.

Dated: New York, New York
       October 10, 2018

_____
Deborah A. Batts
United States District Judge